[Civ. No. 1608. First Appellate District.—July 28, 1915.]

## H. A. COHEN, Respondent, v. W. W. STOCKTON, Appellant.

CONTRACTS—SALE OF MINE—FRAUD—EVIDENCE.—In an action to recover certain money paid under a contract for the sale of a mine, upon the ground of fraudulent misrepresentations as to the value of ore on a certain level of the mine, the court properly rejected evidence tending to show the value of the mine as a whole, and as to different parts of it, where the issue presented by the pleadings went merely to the representations concerning the value of the ore on the one level.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion of the court.

J. A. Elston, and Black & Clark, for Appellant.

Walter H. Linforth, and James P. Sweeney, for Respondent.

THE COURT.—This is an appeal from a judgment against defendant in an action to recover ten thousand dollars, paid by the plaintiff to the defendant upon a contract for the sale and purchase of a mine, which the plaintiff alleges he was induced to agree to purchase by false and fraudulent representations made to him by the defendant.

The sufficiency of the evidence to sustain the verdict of the jury could not well be nor is it questioned upon the appeal. The defendant relies for a reversal of the judgment against him on the rejection by the trial court of certain evidence, and also on the ground that the court erred in giving and in refusing certain instructions to the jury.

While the record is voluminous, the questions presented are not many, nor are they difficult of solution.

The substance of the complaint is as follows: In July, 1911, the parties to this action entered into an agreement under the terms of which the defendant, in consideration of ten thousand dollars, paid to him, and other payments to be subsequently made, agreed to sell and convey to the plaintiff certain mining property situated in the state of Nevada. That, in order to induce plaintiff to enter into the contract, and to make the said first payment of ten thousand dollars, the defendant, shortly prior to the execution of the contract and to the payment of the said sum of money, falsely told and represented to plaintiff, and also caused one P. E. O'Brien to falsely tell and represent to plaintiff, and to one Charles J. Lyser, an employee and representative of plaintiff, the following things: (a) That at a certain point on the three hundred and twenty-five-foot level in the mine or claim of the Black Eagle Gold Mining Company there had been encountered a ledge or vein of gold-bearing ore eight feet in depth, bearing gold to the extent and value of twenty-one dollars per ton; whereas in truth and in fact there was no vein or ledge of any

size carrying values in gold or any other material. (b) That in the cross-cut in said level before the ledge or vein had been encountered, gold-bearing rock had been found which had assayed in value from five dollars to twenty-one dollars per ton. It is charged that this statement was untrue and in fact utterly false.

That before signing the contract and making the payment of ten thousand dollars plaintiff and a mining expert proceeded to said claim or mine of said Black Eagle Gold Mining Co. to examine said mine, and particularly said vein on the three hundred and twenty-five-foot level; and while there and before making the contract defendant represented to plaintiff that it was impossible to examine said level at that time owing to a cave-in, but told plaintiff that he could rely upon his representations to which reference has already been made.

That while plaintiff and his representative, said Lyser, were at the said mine as before mentioned, defendant showed plaintiff what purported to be a telegram from one George Wingfield, dated July 16, 1911, and purporting to have been sent from Reno, Nevada, advising the said defendant and the said O'Brien that the said Wingfield agreed to their terms, and urging them to come to Reno and settle the deal with him. That the plaintiff and the said O'Brien, who was then and there acting for the defendant and in aid and conjunction with him, falsely represented to plaintiff and pretended that the said telegram had just been received from said Wingfield, and meant that the proposition theretofore made by them to the said Wingfield to sell to him a controlling interest in the capital stock of the said Black Eagle Gold Mining Company, etc., had been accepted by the said Wingfield, and unless the plaintiff signed the agreement giving rise to the present action, without waiting for the clearing of said cross-cut in order to enable himself and his said representative to examine the said alleged vein or ledge on the three hundred and twenty-five foot level in said mine, defendant would proceed to Reno in accordance with the terms of said telegram and conclude the sale of said stock with said Wingfield; that said representations were willfully and deliberately made for the purpose of inducing plaintiff to enter into the said contract and to make the said payment of ten thousand dollars, and that in truth and in fact no such telegram had ever been sent by the said Wingfield to the said O'Brien or to the said de-

fendant, or ever received by them, or either of them, and that said representations with reference to said alleged telegram were part and portion of the scheme of defendant to mislead and deceive the plaintiff, and thereby induce the plaintiff to execute the said agreement and pay the said sum of ten thousand dollars. That plaintiff believed, relied, and acted upon such representations.

That on July 27, 1911, plaintiff rescinded the contract in question, and served upon defendant a notice of rescission, and demanded of defendant the repayment of the ten thousand dollars theretofore paid to him by plaintiff.

The defendant, in addition to his answer—in which he denied the allegations of fraud—filed a cross-complaint, in which he set up the agreement set forth in the complaint, alleging the payment by plaintiff to defendant at the execution of the agreement of ten thousand dollars; alleged that defendant had fully performed the agreement on his part, and that under the terms of the agreement there became due from plaintiff to defendant on August 19, 1911, the sum of fifteen thousand dollars, and on September 19, 1911, the further sum of fifteen thousand dollars, neither of which sums had been paid in whole or in part.

The plaintiff filed an answer to the cross-complaint, denying performance or attempt of performance on the part of the defendant.

The prayer of the complaint is for judgment against defendant for ten thousand dollars, paid by plaintiff to the defendant, with interest thereon, while the prayer of the answer and cross-complaint is that plaintiff take nothing, and that defendant have judgment against plaintiff for thirty-thousand dollars and interest.

Plaintiff introduced evidence tending to show that the sole and only reason he signed the contract in question and paid the ten thousand dollars was on account of the representations as to the value of ore at the three hundred and twenty-five-foot level; that if he had known, as his exploration disclosed, that there was no vein at that level he would have had nothing to do with the mine; that the fact that he was shown what purported to be a telegram from Mr. Wingfield hurried him into making the contract, he knowing that said Wingfield dealt in mines, and had the money to buy this mine.

Defendant attempted to introduce evidence tending to show the value of the mine as a whole, and as to different parts of it. Such evidence was excluded by the trial court, and its action in this regard is one of the points urged for a reversal of the judgment. As we view the case, there is no merit in the contention of the defendant that he was entitled to go into this matter because the plaintiff did so. It is true that some evidence along that line crept into plaintiff's case, but part of it was called for by a juror and went in without objection, and all that went in did so incidentally or in passing. In this connection the real question is, Was such evidence on behalf of the defendant admissible under the issue framed by the pleadings? We think it was not, and that the ruling of the court rejecting it was correct. It is urged by the defendant that such testimony was admissible for the reason that it tended to disprove bad faith, and he asserts that courts have frequently ruled that evidence of the value of the consideration given by the party to the transaction who is charged with fraud is relevant. This is doubtless true where the alleged false representation is as to the value of the property generally, but here the plaintiff is not standing on the contract, and seeking to recover damages for the fraud, nor is there any pretense or claim that defendant represented to the plaintiff what the value of the mine in question was. The issue here, and the one upon which the case was tried and submitted to the jury, was as to whether or not the defendant made the representation as to the three hundred and twenty-five-foot level.

These considerations also dispose of one of the questions raised by defendant as to a requested instruction concerning the value of the property involved in the contract.

The court committed no error in refusing to instruct the jury to disregard the testimony of Lyser. It is enough to say that the testimony of Lyser in question corroborated that of the plaintiff as to declarations made by the defendant with reference to the value of the ore in the three hundred and twenty-five-foot level of the mine.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the district court of appeal on August 27, 1915.